***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms with modifications, the Opinion and Award of Deputy Commissioner Homick.
 ***********
The Full Commission finds as fact and concludes as matters of law the following stipulations of the parties:
 STIPULATIONS *Page 2 
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On March 15, 2007, plaintiff was an employee of defendant-employer.
3. The carrier on the risk in this claim is Employers Insurance Company of Wausau and/or Wausau Underwriters Insurance Company.
4. On March 15, 2007, plaintiff sustained a compensable injury by accident to her neck and left upper extremity arising out of and in the course of her employment with defendant-employer.
5. Plaintiff last worked with defendant-employer on March 19, 2007.
6. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 • Exhibit 1: Pre-Trial Agreement;
 • Exhibit 2: Plaintiff's Medical Records;
 • Exhibit 3: Industrial Commission Forms and Filings; and
 • Exhibit 4: Plaintiff's Physical Therapy Records.
Plaintiff introduced the following exhibits, which were received into evidence:
 • Exhibit 1: October 14, 2009 Correspondence;
 • Exhibit 2: Industrial Commission Form 62, dated October 14, 2009;
 • Exhibit 3: Industrial Commission Form 22;
 • Exhibit 4: Correspondence from Kristi Engel;
 • Exhibit 5: Facsimile dated December 11, 2009 from Liberty Mutual;
 • Exhibit 6: Plaintiff's Work and Educational History;
 • Exhibit 7: Mi-De Document — rack installer position; *Page 3 
 • Exhibit 8: Industrial Commission Form 22;
 • Exhibit 9: March 15, 2007 Accident Report;
 • Exhibit 10: Plaintiff's Job Search Records; and
 • Exhibit 11: Defendants' Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents.
Defendants introduced the following exhibit, which was received into evidence:
 • Defendants' Exhibit 1: Industrial Commission Forms and Filings, Medical Records, Time Sheets, Discovery Responses.
7. Plaintiff's issues for determination by the North Carolina Industrial Commission are as follows:
 a. Is plaintiff entitled to an Industrial Commission determination concerning whether she is entitled to total disability compensation benefits thus entitling her to the presumption of continuing disability?
 b. Will the Industrial Commission order reimbursement of the $500.00 fee paid for the evaluation by Dr. Rauck?
 c. Are defendants required to secure prior Commission approval before changing or altering plaintiff's average weekly wage amount and resulting compensation rate being paid to plaintiff under the Form 60 Award?
 d. Is plaintiff entitled to immediate reinstatement of disability benefits as contained in the Form 60 Award unilaterally altered by defendants on October 14, 2009 over plaintiff's objection?
 e. Is plaintiff entitled to a ten percent (10%) late payment penalty to be paid by defendants pursuant to N.C. Gen. Stat. § 97-18(g)? *Page 4 
 f. What is plaintiff's average weekly wage?
 g. Is defendants' conduct in refusing to continue paying plaintiff disability benefits at $715.01 per week since October 14, 2009 unreasonable, thus entitling plaintiff's counsel to an award of attorney's fees under N.C. Gen. Stat. § 97-88.1?
 h. Will the Commission allow defendants' April 6, 2010 Motion seeking Commission approval of Cascade Disability Management, Inc., a wholly owned subsidiary of defendant-carrier Liberty Mutual Insurance Company, to provide vocational rehabilitation services to plaintiff, or will the Commission deny defendants' motion in favor of the Commission's choosing a different vocational rehabilitation provider to assist plaintiff with vocational rehabilitation?
Defendant's issues for determination by the North Carolina Industrial Commission are as follows:
 a. Has plaintiff reached maximum medical improvement for all injuries suffered in the work accident of March 15, 2007?
 b. Has plaintiff established that she is unable to return to gainful employment as a result of the March 15, 2007 work injury?
 c. Should the Commission grant defendants' April 6, 2010 Motion and require plaintiff to participate in the requested vocational rehabilitation assessment?
 *********** *Page 5 
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 29 years old. Plaintiff completed the tenth grade of high school and has worked since 1996 as an unskilled general laborer.
2. On October 25, 2006, defendant-employer hired plaintiff to work as a level one rack installer (entry level). Her duties included traveling to new retail home improvement stores to assist with onsite store setup and to older stores where remodeling was underway. Plaintiff was responsible for installing merchandise racks and shelves. As set forth in her job description, plaintiff was required to perform "constant heavy lifting," up to approximately 75 pounds.
3. Plaintiff testified that she would earn $1,000.00 per store. This amount included lodging, a meal allowance of $20.00 per day, and a mileage allowance. Plaintiff worked for several days in Tennessee in late November 2006, from November 28, 2006 through December 4, 2006, in Georgia, from December 5, 2006 through December 12, 2006, in Ohio, from December 13, 2006 through December 17, 2006, in Pennsylvania, from December 27, 2006 through January 1, 2007, in New Hampshire, from January 3, 2007 through January 7, 2007, in Delaware, and from January 9, 2007 through January 13, 2007, at an unspecified location. Plaintiff worked next on March 13, 2007.
4. Kristi Engel, the Human Resources Manager for defendant-employer testified that rack installers earned $800.00 or $900.00 per store, depending on whether it was a five or seven day set-up. Defendant-employer paid for lodging directly and the meal and mileage allowance were paid separately. *Page 6 
5. According to Ms. Engel, rack installers work approximately 25 weeks per year. Employees are instructed to check a voicemail message to determine work availability. Employees are only paid for the time they are at an installation.
6. On March 15, 2007, plaintiff was working in Wilmington, Delaware for defendant-employer installing metal merchandise racks, when a rack began to fall. Plaintiff grabbed the frame with her left hand; her left arm was jerked downward and behind her, stretching and pulling it. Plaintiff reported the accident and defendant-employer completed an accident report that same day.
7. On March 15, 2007, plaintiff presented to Concentra Medical Centers in Wilmington, Delaware, where she complained of left shoulder pain and numbness in her left arm. A left shoulder x-ray was unremarkable for any injury. Dr. Frederick Williams, an occupational medicine specialist, diagnosed plaintiff with a left shoulder strain and prescribed an arm sling. Dr. Williams assigned work restrictions of no pushing or pulling greater than ten pounds and no reaching above shoulder level.
8. From March 16, 2007, through March 19, 2007, plaintiff worked for defendant-employer but only used her right hand. After March 19, 2007, plaintiff returned home to Taylorsville, North Carolina.
9. As plaintiff's left arm injury failed to improve, she presented to Joy Moretz, a certified physician's assistant, at Bowen Primary and Urgent Care on March 28, 2007. A left shoulder MRI performed on April 4, 2007, revealed a Grade 1 AC separation, borderline impingement with bursitis, a low grade tear of the supraspinatus muscle, and possibly torn biceps. Plaintiff was referred to an orthopedic specialist. *Page 7 
10. In April or May 2007, defendants accepted plaintiff's March 15, 2007 injuries as compensable and paid for plaintiff's medical treatment and temporary total disability benefits.
11. On April 20, 2007, plaintiff presented to Dr. Peter T. Hurley, an orthopedic surgeon, who opined that plaintiff had sustained a hyperextension/abduction stretch injury to her left upper extremity resulting in neck and left arm pain and numbness. Dr. Hurley recommended physical therapy, continued plaintiff's pain medication of Vicodin and Flexeril, and restricted her to right hand work only.
12. Plaintiff continued to present to Dr. Hurley for moderate to severe pain in her left upper extremity. Plaintiff's pain remained unimproved by physical therapy but was relieved to some degree by pain medication. Dr. Hurley noted that plaintiff had some popping while moving her left arm and opined that plaintiff may have a problem with her rotator interval. Dr. Hurley maintained plaintiff's work restrictions. On December 24, 2007, Dr. Hurley referred plaintiff to Dr. Russell Gilchrist, a physiatrist, for her chronic left shoulder pain condition.
13. On January 8, 2008, plaintiff first presented to Dr. Gilchrist, who recommended an MRI of the cervical spine to document any significant nerve root impingement.
14. On January 10, 2008, the MRI was performed and revealed a mild C5-6 disc bulge. Dr. Gilchrist diagnosed plaintiff with left shoulder pain status post trauma, left cervical and posterior shoulder myofascial pain, and left brachial plexopathy. Dr. Gilchrist referred plaintiff for an EMG. The EMG suggested chronic radiculopathy at C8-T1. Dr. Gilchrist restricted plaintiff to no use of her left upper extremity. Dr. Gilchrist also administered a series of transforaminal injections, which provided short-term relief. *Page 8 
15. On May 15, 2008, Dr. Gilchrist opined that plaintiff had reached maximum medical improvement and assigned a ten-percent (10%) permanent partial disability rating to her left arm.
16. On June 2, 2008, plaintiff presented to Dr. Hurley, who opined that from an orthopedic standpoint, no further restrictions were necessary but that plaintiff should adhere to restrictions assigned by Dr. Gilchrist for a nerve injury.
17. On November 3, 2008, Dr. Gilchrist opined that plaintiff has permanent restrictions to the left arm of no overhead work and no lifting more than 50 pounds, no lifting more than 30 pounds occasionally, and no lifting more than 20 pounds frequently.
18. Dr. Gilchrist continues to monitor plaintiff for ongoing pain management, including trigger point injections to the left trapezius and parascapular muscles and maintains her restrictions and impairment rating.
19. On July 22, 2009, plaintiff presented to Dr. Rauck, a pain management specialist, for evaluation. Dr. Rauck opined that plaintiff's prognosis was good and that she should be able to recover to full functional capacity due to her young age and the nature of her injury.
20. Defendants formally accepted plaintiff's claim as compensable with the filing of a Form 60 Employer's Admission of Employee'sRight to Compensation dated March 5, 2008. The Form 60 listed an average weekly wage of $1,072.46 and a compensation rate of $715.01, which was paid retroactive to March 15, 2007, plaintiff's date of injury. Defendants did not submit a fully completed Industrial Commission Form 22, Statement of Days Worked andEarnings of Injured Employee. *Page 9 
21. In October 2009, defendant-carrier received additional wage information from defendant-employer that indicated the initial average weekly wage on the Form 60 of $1,072.46 was not correctly calculated.
22. Although plaintiff's position with defendant-employer was full-time from October 25, 2006 through March 19, 2007, the evidence revealed that work was not available for plaintiff full time, every week. Plaintiff worked at a job site until the installation of the racks was completed, after which plaintiff might not have another assignment for several weeks.
23. Plaintiff was not paid a regular weekly wage, but instead received an intermittent flat rate of $800 for a five-day rack setup or $900 for a seven-day rack setup. Plaintiff also received $20 per diem for meals as well as mileage reimbursement for travel, both of which were included in her gross wage. Plaintiff would receive the flat rate of $800 or $900 per job regardless of the actual hours spent on a job site, and would only receive a paycheck when a job was completed.
24. Plaintiff's job with defendant-employer had slow and busy periods. Kristi Engel, the Human Resources Manager for defendant-employer testified that the period from September through January was busy, with less work available during the other months of the year. During periods when work was not available, plaintiff was not obligated to be at a job site and was free to return home.
25. Kristi Engel also testified that rack installers only worked approximately 25 weeks out of the year.
26. The evidence also revealed that plaintiff was employed full time with defendant-employer for 20 weeks with gross earnings of $7,647.39, which included the amount defendant-employer reimbursed plaintiff for food and travel expenses. Based on the irregular and *Page 10 
intermittent nature of plaintiff's employment, defendants determined that plaintiff's average weekly wage should be $382.00, yielding a compensation rate of $254.68. This resulted from dividing plaintiff's gross earnings by the actual weeks of full time employment. Accordingly, defendants filed a Form 62 Notice ofReinstatement or Modification of Compensation
dated October 14, 2009, adjusting plaintiff's average weekly wage. Plaintiff subsequently disputed the unilateral action on the part of defendants as well as the method of calculation.
27. Pursuant to N.C. Gen. Stat. § 97-2(5), there are five methods for calculating average weekly wage, which are set forth in order of preference. The first two methods are inapplicable, as they only apply where an employee has been employed for 52 weeks prior to the injury. Plaintiff was only employed with defendant-employer for 20 weeks prior to the injury.
28. Plaintiff advocates application of the third method of N.C. Gen. Stat. § 97-2(5), which involves using the actual number of weeks plaintiff received wages of employment. The third method does not fairly approximate plaintiff's pre-injury earnings due to the intermittent nature of plaintiff's employment. Furthermore, this method would not be fair to defendants as it would only count the peak time when work was frequently available.
29. The fourth method is used when the shortness of time during which the employee has been employed or the casual nature of the employment makes it impractical to compute the average weekly wage using the first three methods. The fourth method uses wages of a comparable employee. Defendants submitted wage documentation of a comparable employee, including pay stubs and a Form 22. The comparable employee was also a rack installer as was plaintiff and commenced work at approximately the same time; however, this rack installer worked the entire year, unlike plaintiff. Therefore, the one year period included the peak and slow times and reflected the intermittent work schedule due to the nature of the employment of a *Page 11 
rack installer. The 52-weeks of employment of the comparable employee extended from November 2006 through October 2007. Over the course of 52 weeks, the comparable employee earned $31,363.47, resulting in an average weekly wage of $603.14, with a compensation rate of $402.11. However, the evidence needed under method four is insufficient in this case to determine plaintiff's average weekly wage in that (1) there is no evidence that the comparable employee submitted by defendants was in the same locale and community and (2) the wages of the comparable employee provided by defendants were incomplete as they do not reflect the wages of the similar employee for the 52 weeks prior to the injury. The Full Commission finds that the fourth method would not be fair and just to the parties.
30. The fifth method of calculation is to be used for exceptional reasons and where the previous methods would be unfair, either to the employer or employee. The Full Commission finds that the fifth method will result in a fair average weekly wage to both the employee and the employer. In this case, under the fifth method, the Full Commission determines plaintiff's average weekly wage by dividing the earnings of the comparable employee from November 2006 through March 15, 2007, by the number of weeks that the comparable employee worked from November 2006 through March 15, 2007. From November 2006 through March 2007, the comparable employee worked 19.29 weeks earning a total of $12,637.95. This results in an average weekly wage of $655.16 with a compensation rate of $436.80.
31. Regarding the manner in which defendants reduced plaintiff's average weekly wage, plaintiff contends that pursuant to the Form 60 Employer's Admission of Employee's Right to Compensation, defendants were required to follow the procedure set forth in N.C. Gen. Stat. § 97-18.1 and secure Commission approval before making any change. The undersigned find *Page 12 
that this provision applies to termination or suspension of benefits, which is inapplicable to the present matter.
32. The period from March 15, 2007, plaintiff's date of injury, to October 14, 2009, the date of the modification of plaintiff's average weekly wage, is approximately 134.71 weeks. During this period, plaintiff received temporary total disability compensation at the rate of $715.01 per week. However, using the compensation rate as calculated above ($436.80), defendants overpaid plaintiff in the amount of $278.21 per week, resulting in a total overpayment to plaintiff over the 134.71 week period of $37,477.67.
33. Since filing the Form 62 Notice of Reinstatement orModification of Compensation on October 14, 2009, defendants have paid plaintiff the reduced weekly benefit of $254.68. However, using the compensation rate as calculated above ($436.80), defendants underpaid plaintiff each week in the amount of $182.12 ($436.80 — $254.68'$182.12). From October 14, 2009 until the date of the Deputy Commissioner's Opinion and Award (August 16, 2010), there are approximately 42.9 weeks. This results in an underpayment of $7,812.95, for this time period ($182.12 x 42.9).
34. At the first hearing before the Deputy Commissioner on January 15, 2010, the parties entered into a Consent Agreement wherein defendants agreed to authorize Dr. Richard Rauck to assume plaintiff's treatment for her neck and upper left extremity injuries. Plaintiff's counsel had previously paid $500.00 to Dr. Rauck for an initial evaluation of plaintiff. The undersigned find the amount of the fee to be reasonable and this evaluation reasonably required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
35. Plaintiff has not worked since her injury on March 15, 2007. Plaintiff testified that she sought employment but has been unable to secure a position within her work restrictions. *Page 13 
Plaintiff produced a job log that she has kept since approximately July 2009, in which she has recorded her efforts to secure employment within her work restrictions.
36. The greater weight of the evidence reveals and the undersigned find that plaintiff is capable of some work and has made reasonable efforts to secure suitable employment. The undersigned find that plaintiff's inability to earn the same or greater wages as she was earning in the same or any other employment is due to her disability from the March 15, 2007 work injury.
37. On April 6, 2010, defendants filed a Motion to Compel Compliance with Vocational Rehabilitation. Upon plaintiff's response, this issue was set for hearing on May 25, 2010. The undersigned find that plaintiff would benefit from vocational rehabilitation. As there is no evidence of record that professional and competent services would not be provided by Cascade Disability Management, Inc., the undersigned find that the provision of vocational rehabilitation services by Cascade Disability Management, Inc., would be appropriate.
38. Plaintiff's pursuit and defendant's defense of this claim was reasonable.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 15, 2007, plaintiff sustained an admittedly compensable injury by accident to her left shoulder, arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. N.C. Gen. Stat. § 97-2(5) establishes an order of preference in the calculation of an employee's average weekly wage. Bond v.Foster Masonry, Inc.,139 N.C. App. 123, 128, 532 S.E.2d 583, 586 (2000). *Page 14 
3. Given that the first and second methods under N.C. Gen. Stat. § 97-2(5) do not apply, the third method would be unfair, and there is insufficient evidence to use the fourth method, the Full Commission finds that the fifth method is the most fair and just means to both parties to determine plaintiff's average weekly wage. N.C. Gen. Stat. § 97-2(5). Based upon the Full Commission's calculation under the fifth method, plaintiff's average weekly wage is $655.16, with a compensation rate of $436.80. N.C. Gen. Stat. § 97-2(5).
4. As a direct and proximate result of plaintiff's admittedly compensable injury by accident on March 15, 2007, plaintiff has been unable to earn the same or greater wages as she was earning in the same or any other employment. As a result, plaintiff is entitled to receive ongoing temporary total disability compensation at the rate of $436.80 per week, continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
5. As the result of defendants' underpayment of compensation, plaintiff is entitled to payment in one lump of the amount of $182.12 per week, commencing October 14, 2009 and continuing until the compensation rate is corrected according to the provisions of this Opinion and Award. N.C. Gen. Stat. § 97-2(5).
6. The decision of whether to grant a credit for over payment is within the sound discretion of the Commission. Such decision to grant or deny a credit will not be disturbed on appeal in the absence of an abuse of discretion. N.C. Gen. Stat. § 97-42;Moretz v. Richards Assoc.,74 N.C. App. 72, 75, 327 S.E.2d 290, 293 (1985), aff'd asmodified, 316 N.C. 539, 342 S.E.2d 844 (1986). The Full Commission finds based upon the facts of this case that defendants are not entitled to a credit for overpayment of compensation to plaintiff pursuant to the March 5, 2008 Form 60 filed by defendants. *Page 15 
7. As a direct and proximate result of plaintiff's compensable injuries by accident on March 15, 2007, plaintiff is entitled to all medical expenses incurred or to be incurred for her compensable left shoulder injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability, including the provision of vocational rehabilitation services to be provided by Cascade Disability Management, Inc. Dr. Richard Rauck is approved as plaintiff's authorized treating physician for her chronic left shoulder condition, including but not limited to his recommendations of water therapy and additional physical therapy. N.C. Gen. Stat. § 97-25.
8. Defendants admitted the compensability of plaintiff's injury by accident by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v. Charmes/Arby'sRoast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001).
9. In order to meet the burden of proving continuing disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).
10. An employee may meet this burden of proof by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages.Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); *Page 16 Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993). Evidence of record reveals that plaintiff is capable of some work, but that she has, after a reasonable effort, been unsuccessful in obtaining suitable employment.
11. Neither party pursued any issue in this matter in an unreasonable manner or without reasonable ground and, therefore, neither party is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay temporary total disability compensation to plaintiff at the rate of $436.80 per week from March 15, 2007, and continuing until further order of the Commission. Since filing the Form 62 Notice of Reinstatement or Modification of Compensation
on October 14, 2009, defendants have paid plaintiff temporary total disability compensation at the compensation rate of $254.68. Using the compensation rate for a comparable employee, defendants underpaid plaintiff each week in the amount of $182.12 ($436.80 — $254.68'$182.12). An underpayment of compensation having accrued, the amount of the underpayment shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein, with a credit to defendants for the temporary total disability benefits already paid to plaintiff during this same period.
2. Defendants had in their possession the necessary documents to make the proper determination of plaintiff's correct average weekly wage. Because defendants' overpayment of *Page 17 
temporary total disability compensation to plaintiff was solely attributable to their own error, defendants should bear the responsibility for their error and therefore are not entitled to a credit for the overpayment due to miscalculation of plaintiff's average weekly wage.
3. Defendants shall pay all past and future medical expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident to her left shoulder, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability, including the provision of vocational rehabilitation services by Cascade Disability Management, Inc. Dr. Richard Rauck is approved as plaintiff's authorized treating physician for her chronic left shoulder condition, as are his recommendations of water therapy and additional physical therapy.
4. The $500.00 fee paid to Dr. Rauck by plaintiff's counsel for his initial evaluation of plaintiff was reasonable, and defendants shall reimburse plaintiff's counsel for this amount.
5. As a reasonable attorney's fee, defendants shall pay plaintiff's counsel in the amount of twenty-five percent (25%) of the underpayment of compensation pursuant to Paragraph 1 of this Award. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
6. Defendants shall pay the costs.
This the 22nd day of February 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING: *Page 18 
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1